UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **LLEWELLYN C. MANTER,** | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:22-cv-00030-JDL |
| | ) |
| **UNITED STATES OF AMERICA,** | ) |
| Defendant. | ) |

**ORDER**

This action arises from a motor vehicle accident on June 11, 2019, in Pittston, Maine, in which a mail truck operated by a United States Postal Service employee struck a vehicle operated by Plaintiff Llewellyn C. Manter. Manter filed an Amended Complaint on March 17, 2022 (ECF No. 4), and Defendant United States of America filed an Answer on May 20, 2022 (ECF No. 8).[1] In his Amended Complaint, Manter argues that the Government is liable for compensatory damages, punitive damages, interest, and costs. The Government admits that its employee negligently caused the collision while acting within the scope of his employment, and that the employee's negligence caused Manter damages. A bench trial was held on the issue of damages on November 16 and 17, 2023. Having carefully evaluated the evidence, I make the following findings of fact and conclusions of law.

---

[1] The Amended Complaint also named as a defendant the Postal Service employee who operated the vehicle that struck the Plaintiff. The employee has been dropped from the case (ECF No. 11).

1

## I. FINDINGS OF FACT

Manter suffered a concussion—which is a mild traumatic brain injury—as well as whiplash as a result of the June 11, 2019, collision. The concussion caused Manter to experience neurocognitive impairments including problems with his focus, mental clarity, and memory, as well as phono- and photophobia, nausea, headaches, and balance issues. In the months immediately following the accident, Manter required support to perform many routine activities. He could not, for example, drive or do household chores. Manter has diabetes, and family members had to remind him to complete routine tasks such as eating and monitoring his blood sugar. Manter spent substantial periods of time staying in a quiet, darkened room or wearing a hood to avoid stimulation that worsened his symptoms. He was, at times, mentally foggy and could became easily confused, and he would lose his balance performing even simple physical activities.

Manter's functioning after the accident was in marked contrast to his functioning prior to the accident. Before the accident, family and friends viewed Manter as having an engaging, charismatic personality, and as being intellectually gifted and particularly adept at mathematics. In addition to managing his excavation business and two self-storage facilities, Manter was physically active and engaged in outdoor activities including snowmobiling, hiking, and fishing.

Manter's medical treatment following the accident included an initial trip to the emergency room, visits with his primary care provider, a neurology consult, osteopathic manipulation therapy, physical therapy, and speech language therapy. Despite these efforts, some of Manter's symptoms persisted, which caused him

frustration, and he often became easily upset. These are common secondary effects of post-concussive syndrome. By the beginning of October 2019, Manter had improved neurocognitively, as documented in the reports of his speech language pathologist and his primary care provider, whom Manter told that he was feeling and doing better. Although his symptoms had generally improved by that point, Manter still reported sensitivity to fluorescent lights and noisy environments.

Manter's symptoms continued to subside from January 2020 through March 2023, although they did not resolve entirely. Manter was also grieving the deaths of his mother and father during this period. Manter told his treating providers at various times that he felt at least ninety percent recovered from the June 2019 accident. In the summer of 2020, Manter and his wife took mile-long walks several times per week, and since then he has occasionally skied and taken trail rides with his snowmobile. However, Manter has continued to experience some difficulties with balance and word retrieval. Additionally, in contrast to Manter's acuity with numbers before the accident, he has had difficulty performing business-related bookkeeping and processing mathematical equations in his head since the accident.[2]

As of the trial, Manter continues to be unable to engage in his pre-accident level of participation in outdoor physical activities, including backcountry snowmobiling and fishing. His friends and family members testified that they still observe instances in which Manter experiences problems with memory, word-finding, and balance. Notwithstanding these challenges, Manter continues to oversee his

---

[2] Manter experienced anemia and associated symptoms in November 2021, but that condition and its symptoms were unrelated to the secondary effects of his post-concussive syndrome.

excavation business, and he has operated heavy machinery and performed physical labor to improve various properties.

In March 2023, Manter began taking the prescription medicine Vyvanse, a stimulant, to treat his post-concussive syndrome. The medication has substantially improved Manter's mental clarity, reducing his "brain fog." He has also resumed actively participating in the charitable activities of the Freemasons. Although Vyvanse has markedly improved Manter's cognitive functioning, Manter continues to experience diminished self-confidence. He believes that people in his life view him as less capable than he was prior to the accident. Overall, a preponderance of the evidence establishes that Manter's current symptoms of mild neurological impairment, though greatly improved since the accident through treatment including his Vyvanse regimen, persist and are proximately caused by the injury he sustained in June 2019.

As of the trial, Manter is fifty-two years old. He has several other medical conditions that predate the June 2019 accident, including hypertension, type 1 diabetes, and blindness in his right eye. As of the trial, Manter had incurred a total of $21,786.58 in medical expenses associated with his accident-related injuries, costs that the parties agree are reasonable. Manter does not seek damages for ongoing and future treatment costs or for lost earnings, and the evidence received does not establish any other future damages—such as medical expenses, lost earnings, or suffering—by a preponderance. In addition, no evidence was received regarding Manter's life expectancy.

## II.  LEGAL ANALYSIS

Manter brings this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C.A. §§ 1346(b), 2671-2680 (West 2023).[3] "The 'law of the place' provides the substantive rules to be used in deciding FTCA actions." *Bolduc v. United States*, 402 F.3d 50, 56 (1st Cir. 2005) (quoting 28 U.S.C.A. § 1346(b)(1)). "The phrase 'law of the place' refers to the law of the state in which the allegedly tortious acts or omissions occurred." *Id.* The tortious conduct here occurred in Maine, so Maine law provides the substantive rules to decide this FTCA action.

Because the Government does not dispute liability in this case, the legal questions presented relate solely to damages. "Tort damages, with the exception of punitive damages, are intended to make the plaintiff whole by compensating him or her for any injuries or losses proximately caused by the defendant." *Reardon v. Lovely Dev., Inc.*, 2004 ME 74, ¶ 9, 852 A.2d 66. To recover damages under Maine law, a plaintiff must establish "facts from which the loss may be determined to a probability." *Snow v. Villacci*, 2000 ME 127, ¶ 9, 754 A.2d 360 (citing *Currier v. Cyr*, 570 A.2d 1205, 1210 (Me. 1990)); *see also Michaud v. Steckino*, 390 A.2d 524, 530 (Me. 1978) ("[I]t is well settled law that damages are not recoverable when uncertain, contingent, or speculative. Damages must be grounded on established positive facts or on evidence from which their existence and amount may be determined to a probability.").

---

[3] Although Manter sought punitive damages in his Amended Complaint, the United States cannot be held liable for punitive damages under the FTCA. *See* 28 U.S.C.A. § 2674.

In its Answer (ECF No. 8) and Final Pretrial Memorandum (ECF No. 25), the Government asserted the affirmative defense that Manter failed to mitigate his damages. "A plaintiff has a duty to use reasonable efforts to mitigate his or her damages, but because mitigation is an affirmative defense, the burden is on the defendant to show that the plaintiff failed to take reasonable steps to mitigate damages." *Lee v. Scotia Prince Cruises Ltd.*, 2003 ME 78, ¶ 22, 828 A.2d 210. "A plaintiff's duty to mitigate arises after he or she has suffered an injury or loss, and focuses on whether the plaintiff took reasonable steps to avoid or reduce damages that were proximately caused by the negligence of the defendant." *Searles v. Fleetwood Homes of Pennsylvania, Inc.*, 2005 ME 94, ¶ 38, 878 A.2d 509. "The touchstone of the duty to mitigate is reasonableness." *Schiavi Mobile Homes, Inc. v. Gironda*, 463 A.2d 722, 725 (Me. 1983).

Based on the record evidence, the Government has not shown by a preponderance that Manter failed to mitigate his damages. Manter sought appropriate treatments in the months and years following the accident, and the Government has not established that the physical activities or lifestyle he has engaged in since the accident were detrimental to his recovery. Because I find that Manter used reasonable efforts to mitigate his injuries, the Government has not established the affirmative defense of failure to mitigate.

The evidence also does not establish that Manter's post-accident symptoms were independently caused, in whole or in part, by his diabetes or other preexisting conditions, or by his grief related to the death of his parents. Accordingly, the Government has not proven by a preponderance of the evidence that the

6

neurocognitive symptoms Manter experienced after the accident were independently caused, in whole or in part, by other factors. *Bratton v. McDonough*, 2014 ME 64, ¶ 19, 91 A.3d 1050 ("[W]hen a defendant asserts that an independent factor, rather than the defendant's acts, caused the plaintiff's harm, it is the defendant's burden to prove that independent *causation* by a preponderance of the evidence.").

In calculating compensatory damages, I am guided by the principle noted earlier that a damages award is "intended to make the plaintiff whole by compensating him or her for any injuries or losses proximately caused by the defendant." *Reardon*, 2004 ME 74, ¶ 9, 852 A.2d 66. Damages can be properly awarded to compensate a plaintiff for—among other things—pain, suffering, and loss of enjoyment of recreational activities, including, as is the case here, snowmobiling. *See, e.g.*, *Gilmore v. Cent. Maine Power Co.*, 665 A.2d 666, 671 (Me. 1995). Applying these principles to this case, compensatory damages are appropriately allocated in relation to the following periods associated with the accident and Manter's gradual recovery: (1) the collision on June 11, 2019, to December 31, 2019—a period of approximately seven months, by the end of which Manter demonstrated a marked improvement in his symptoms; (2) January 1, 2020, to February 28, 2023—a period of thirty-eight months before Manter began treatment with Vyvanse; and (3) March 1, 2023, to the last day of trial on November 17, 2023—a period of approximately nine months during which Manter benefited from the Vyvanse regimen. In relation to these periods, reasonable compensatory damages for Manter's pain and suffering, emotional distress, and loss of enjoyment of life are (1) $50,000 for the period of June 11, 2019, to December 31, 2019; (2) $66,500 for the

period of January 1, 2020, to February 28, 2023; and (3) $6,000 for the period of March 1, 2023, to November 17, 2023.  These amounts result in a total of $122,500.  Manter is entitled to an additional award of $21,786.58 for his medical expenses.  The resulting damages total $144,286.58.

## III.  CONCLUSION

It is accordingly **ORDERED** that judgment is awarded to Plaintiff Llewellyn C. Manter and against Defendant United States of America in the amount of $144,286.58, plus interest and costs as allowed by law.

**SO ORDERED.**

 Dated:  February 20, 2024

                                                         **/s/ JON D. LEVY**
                                       **CHIEF U.S. DISTRICT JUDGE**